Thank you, Judge Smith. Good morning, and may it please the Court. We're here today because the film doesn't lie. A police officer pulled Michael Anderson over one night, claiming that the driver's side headlight on Anderson's Ford pickup truck was out. But two videos from two different cameras, one before the stop and one after, tell a very different story. Those videos show that Anderson's headlights were both on and shining brightly. As a result, the officer lacked reasonable suspicion to pull Anderson over. The stop violated Anderson's Fourth Amendment rights, and evidence obtained during the stop must be suppressed. This court has held that video liability in significant evidentiary weight. But from the beginning of this case, the government has said, don't look at the video. That is not the best evidence. And from the beginning of the case, Anderson has said, examine the video carefully. This is the best evidence. When it came time for the district court to make a decision, the district court discounted the video evidence and said that it wasn't clear. And we submit on appeal that the video evidence is clear. And this court is able to review the video evidence. It must view the facts in the light depicted by the video. And here we need to take that requirement literally. We need to review the facts of the headlight depicted by the video. And in our briefs, in the opening brief at page 16, and in our reply brief at page one, we show a zoomed-in view of the videos. Again, one video before the stop, one video after the stop, that showed that Anderson's headlights were both on. And, uh . . . So, assuming that the, that the district court did look at the videos, um, and the, that says that they can't tell, you know, are we, should we look at the videos ourselves and Absolutely, Judge Elrod. This court, uh, has said that, that you all have to view the evidence as depicted by the video. Uh . . . Even if the district court, there's uncertainty? Absolutely. And so, in our 28J letter that we submitted last week, there's a First Circuit case that deals with a very similar situation. Uh, in that case, it was a video and audio recording, and the issue was whether an officer said no after, uh, the defendant asked, you know, can any of this be used against me? And there, the district court, you know, said in its order, repeatedly viewed, uh, the video, listened to it, and it just couldn't tell whether, you know, it was unintelligible, whether the officer said no or not. And the First Circuit admitted that it was a close question. It was a difficult case. There was a bunch of people speaking at the same time. Uh, it wasn't an obvious answer, but when they reviewed it, they said, yes, you know, we can tell that he actually said no. So, we're allowed to go behind the, and substitute our judgment in these video cases? Is that, we've said that before in maybe Castillo or something? Is that, what case have . . . So, I think . . . I think . . . It's, and it's, this, and it controls. The right case that we cite in our brief is the most recent time that this court has said that, and that was just earlier this year. Uh, but this goes back to a, you know, Supreme Court case, Scott v. Harris, where, you know, Justice Scalia said, what, you know, when you're deciding, and that was on summary judgment, but the same thing, we don't need to take, uh, this evidence as viewed by the district court, because we can look at it ourselves. This isn't a case where we have, uh, testimony on the stand, and we have to make credibility determinations. Uh, this is something that we can look at, or this court can look at, and, uh, determine whether his headlights were on or not. And so, there's no deference due. I just want to briefly touch on, uh, the district court thought that Mr. Anderson's so-called admission was the strongest evidence, and that admission is at best ambiguous, but compared to the videotape, it just doesn't hold any water. If we were here only on Mr. Anderson's admission, uh, we probably would not be here, to be honest, or if we were, we would have a much, uh, tougher road to trek down to get reversal. What is the admission? I, I'm not sure, Your Honor. I, he, and this is also something that this court can review, because it is on the body cam from four minutes and 45 seconds to five minutes, and I don't think there is an admission there. He reacts with surprise. He says, he just realized it was, if it was out. He says, I guess I was running on high beams. He said, I didn't know, but when I take it down from high beams to low beams, I guess there's only one. Uh, it, it is a defendant trying to explain what he has just been told the problem is, but there is no evidence that he actually knew that his headlights were out. Is there some backstory here that's in the record that you, because it's obviously, even if, if, assuming the government is right and you could tell that the, that the headlight is out, which I know you disagree with, it would be very difficult. What, and the person, the police officer was going into the convenience store thing to, to, um, stop the car is very quickly, what, is there, were they looking for this guy or something, or is there something that, some other store, backstory that's in the record? There's no evidence in the record on this. At, in the district court, the government made the argument that this particular officer did not know who Mr. Anderson was, but that officer never testified to that fact. So we really don't know. And you're absolutely right, Judge Allred, this decision was made very quickly. The cars were still fairly far away at the time of the decision. Uh, and the officer pulled into the parking lot at an angle that you can't tell when the truck actually comes by, whether his headlights were on. And conspicuously absent from the record is any body cam video of the headlights. So, but we do have these clear videos, you know, before and after. And the, the after video of the backseat cam seems almost, you know, to be an accident, but it, you know, very clearly shows that these headlights were both on. I want to briefly touch on that. Well, but let's look, let's look at specifically what he said and what you may, may have referred to as his admission. So the officer says that he had pulled him over because the left front headlight is out. Uh, that's what I pulled you over for, Mr. Anderson says, oh yeah, yeah, yeah. And then the officer, has it been like that for a while? Anderson, no. It, well, I just realized it was because I guess it was running on high beams. Question, it was running on high beams, Anderson, answer, no, I didn't notice because when you take it down to regular, it only has one. So, I mean, common experience tells me that that's what you do if you're a driver and one of your headlights is out till you can get it fixed. Sometimes you have to run on high beams so that you have two lights showing in the front. That's exactly what your client, it seems to me, has admitted there. With all due respect, Jed Smith, I don't think it's that clear of an admission. And the very first thing he said when the officer pulled him over that wasn't included in that little exchange is, really? You know, the officer tells him your headlights are off and the first thing he says is, really? And he keeps saying, you know, I just realized it was. I didn't know, I guess. But again, aside from the admission, so-called admission, I don't think it's an admission, the video evidence, we have to view the evidence as depicted by those videos. Again, if we were here solely on his statement, we would have a very tough road and I doubt that y'all would have invited us to New Orleans to argue about it. But we have the evidence itself and see that the headlights were on. So we would ask that this court reverse the district court's order denying the motion to suppress and vacate Mr. Anderson's conviction. It's confusing to me that the magistrate judge relied on this alleged admission because it's after the fact. It doesn't have to be before. So you can't establish some reason that it was okay to pull the person over based upon something they said after the fact. Can you help me with that? That's right, Judge Elrod. I mean, I think we also had the officer's testimony. So I guess the magistrate judge somewhat thought that Mr. Anderson's statement backed that up, I guess. But that's right. We have to rely on, you know . . . So the officer's statement that his headlight was out, and that's the basis, and I observed that. That seems to be it, Judge Elrod. If there aren't any other questions, we'd ask the court to reverse and vacate Mr. Anderson's convictions. You've saved time for a bottle. Thank you, Mr. Hannes. Ms. Durbin? May it please the court, Laura Durbin for the United States. This court can affirm the district court's order denying suppression because one, the district court's fact findings of both the video and the testimony were not clear. And two, the district court's testimony where he was told that the headlight was out, indicating that he was aware that the headlight was out, was not clearly erroneous. First, I'll discuss about the videos briefly. The district court said on the record it would view the videos. And this court has said, when testimony conflicts with video evidence, the court must view the facts in light of the video. But there's not a conflict with the evidence here. The videos show on the dash cam video, the very beginning, that's video 5756. At the very beginning of the video, you see two cars in one lane opposite the officer. You see multiple lights, and it's hard to tell where those lights are coming from. The officer then turns perpendicular in front of Mr. Anderson. At that moment— I just want to stop you because now you're agreeing that you can see two headlights. The government has maintained that you can see two headlights. Well, when I look at the video, I can see two headlights in two different places that seem to be one directly across from the other, which looks like two headlights shining on the front of one vehicle. You agree that it looks like that when you look in the video? I agree that it looks like there is a brighter headlight on the passenger side and a less bright headlight on the driver's side, and that accounts for that fog light. So you're agreeing with me there's a light on the passenger side and a light on the driver's side? Yes, yes. You're saying one's brighter and one's— Exactly. That's bright. Exactly. So it looks like the front of a vehicle with two burning headlights. I think it looks like there's a fog lamp illuminated on one light and a headlight on the other. How do you determine that one's a fog light and the other's a headlight? I think that— I'm looking at a still from the video right now, and I can't see the difference. How do you make that determination that one's a fog light and one's a headlight? I think then you defer to the district court's credibility findings of the officer, where he said, where he testified the fog light was illuminated on the driver's side. So that accounts for why there is a light source from the driver's side. And we want videos to be an arbiter of the facts because it's an unbiased witness. And the standards that we've adopted around videos leads us towards that belief. But sometimes the videos are just like any other witness. They're imperfect. Here it's dark. The district court noted that the videos were not of great quality. I forget the exact language the district court used. And sometimes videos don't capture everything. And so the district court is in this position of, just like any other fact findings, determining what happened. And here the district court made the determination, these videos are not probative. So I'm going to rely on the other evidence, which included Officer Contreras' testimony and Mr. Anderson's statement to the officer that he was running on low beams. What do you do about running on low beams? What? I think it was much like how Judge Smith characterized it. I don't know exactly what—I can't speak for Mr. Anderson. All I can do is review the video. And I think what he was saying was, I had the high beams on. When I take it down off the high beams, there's only just one, meaning there's only just one headlight. Well, you'd interpret that to mean only one headlight. But I don't know what this truck is like, and I didn't research it. But there are headlights on one side of the vehicle where there may be two bulbs in the same headlight. You agree? Right. There are cars that are that way. So when he said it goes to one, why don't we assume he wasn't just saying it goes to one bulb in the same headlight where there were two? Which means it wouldn't be, it just wouldn't be as bright when it goes to low beam. I mean, you could assume that, but you still have the testimony of the officer and the video showing less bright lights. So the officer's view of there's just one headlight is not unreasonable under those facts. And also, the district court— What I'm getting at is, why is it reasonable to conclude that you have some kind of confession that he only had one light when he could have just been talking about a single bulb in the same light? Well, I think under the standard, when there's two plausible explanations between the evidence, if there are two permissible views, the district court's view that its choice cannot be clearly erroneous. And so while somebody else may have found, oh, this is what he means, the district court's view of his statement is not implausible. And so the district court's finding, and the district court didn't necessarily say it was an admission, but his statement indicated that he was aware that he only was operating with one headlight was not implausible from Mr. Anderson's statement. Okay. So the video, you agree that the video shows that there are two lights, even if you think one of them is less bright? Yes. Yes. Okay. Do you agree that the video afterwards also shows that the headlight is working? From the rear seat view? Yes. I think that that shows the same as the dash cam, where there's a brighter light source on the passenger side. But that's not a reason for stopping. If the headlight was out? If one is brighter than the other. I think it indicates how the district court viewed it and how the officer testified that the light that you see on the driver's side was a fog lamp or a parking light, and that the headlight was not illuminated. And that's a violation under the transportation code. And the video... But the officer could have told that at the time that he was stopping it, whenever it looks like there are two lights. You not only have to say that that's what is, you have to say that that's what the officer could have observed. And so it looks like there are two lights that you can see, and you admit that there are two lights. So the fact that one didn't appear quite as bright is not going to be enough of a reason to stop someone. Well, the officer is still testifying that the headlight is out. No one has said that it looks like the thing is out from the distance that the officer made the decision to stop the vehicle, which is some credible... He had already decided to stop him by pulling into the thing quite early in the encounter. I guess I'm a little confused as to the question, because the officer did testify that the headlight was out and that there was a fog lamp that was illuminated on the driver's side. Okay. And so you believe that that is consistent with also the after-the-fact video? Yes. You believe it's consistent with the after-the-fact other testimony? Yes. The friend? That said it was lit? I mean, the problem with the friend is he provided a... The district court discounted that, did not find it plausible. And two, that the evidence that the friend provided was a picture of the headlight illuminated with no date of when the photo was taken. But we have the video after the fact that looks like it's lit. The video of the night of? The backseat. The backseat. I guess I would just ask if there are no further questions, that the court finds that the district court's findings were not clearly erroneous and that we ask this court to affirm the judgment and conviction. Thank you. Thank you, Mr. Durbin. Mr. Hinnies for Rabeau? Extremely briefly, Judge Smith. I just want to touch on this fog lamp idea that the government advances. At pages 486 and 87 of the record, the officer testified that this fog lamp would be orange or amber in color. And we submit that when you look at that video of the car coming down the road, those are white lights. Nothing that is orange or amber. So, absent any other questions, we would ask the court to reverse and to vacate Mr. Anderson's conviction. Thank you. Thank you, Mr. Hinnies. Your case is under submission. Next case.